## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LILLIAN ABBY WHITMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-09-900-HE |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Lillian Abby Whitmore ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. §636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing her applications seeking disability insurance benefits and supplemental security income payments in January, 2007 [Tr. 138 - 141and 142 - 144]. She initially alleged that difficulties resulting from arthritis, diabetes, depression, and lupus became disabling as of December 27, 2005 [Tr. 187]. In September, 2008 Plaintiff's attorney filed notice that the claimed date of onset was now June 1, 2008 [Tr.

137]; the claimed onset date was once again changed at the administrative hearing to September 1, 2007 [Tr. 16 and 33]. Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted a November, 2008 hearing where Plaintiff, who was represented by counsel, a vocational expert, and Samantha Hines, Plaintiff's mental health case manager, testified [Tr. 27 - 91 and 113]. In his January, 2009 decision, the ALJ found that Plaintiff was able to perform her past relevant work as a secretary and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 16 - 26]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 5], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on

2

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

In specifying her claims of error on appeal, Plaintiff first maintains that "[t]he ALJ failed to review the longitudinal record which led to an erroneous RFC."[1] [Doc. No. 12, p. 2]. Second, it is Plaintiff's contention that "[t]he ALJ failed to make an individualized assessment regarding the impact that [Plaintiff's] obesity had on her RFC." *Id.* at 4. Plaintiff's third claim is that "[t]he ALJ acted improperly." *Id.* at 6. Fourth, Plaintiff alleges that "[t]he vocational expert (VE) was improperly used at the hearing (CT 78- 81)." *Id.* at 8.

**Analysis**

**The ALJ's Alleged Failure to Review the Record; Alleged Erroneous RFC**

Plaintiff complains that the ALJ's decision "cite[s] only one piece of physical medical evidence to substantiate the physical residual functional capacity (Hereinafter RFC)[2] of [Plaintiff][.]" *Id.* at 2. That evidence is the report of David Wiegman, M.D., [Tr. 21 and 470 - 476], who conducted "a one time only consultative physical exam purchased by Social Security Administration funded by the state disability services." [Doc. No. 12, p. 2]. It is Plaintiff's argument that "[t]he ALJ's decision is wholly silent regarding any sort of treatment provided by [Plaintiff's] treating sources . . . . [and that] the ALJ in his decision appears to ignore or give no consideration to twelve (12) years worth of medical treatment

---

[1] Unless otherwise indicated, quotations in this report are reproduced verbatim.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

for her physical limitations[.]" *Id.* Continuing in this same vein, Plaintiff maintains that "[p]erhaps most egregiously, the ALJ divines an RFC from whole cloth . . . . [and] simply comes to his conclusion that [Plaintiff] is capable of performing work activity at the sedentary level, yet provides no mention as to how he got to this conclusion." *Id.* at 3. Plaintiff concludes that "[n]owhere in the ALJ's decision does he account for having determined the functional impact of the combined effects of the Plaintiff's diabetes mellitus, hypothyroidism, hypertension, obstructive sleep apnea and morbid obesity." *Id.* at 3 - 4.

The Commissioner responds [Doc. No. 13, p. 4] by referencing the ALJ's opening question to Plaintiff's counsel[3] at the administrative hearing: "So the question then becomes what is your theory for an award of benefits given that the state agency has already placed [Plaintiff] at sedentary work?" [Tr. 29]. The response of Plaintiff's counsel was that "we certainly wouldn't challenge the claim of the sedentary." *Id.* She went on to explain Plaintiff's theory that her mental difficulties – anxiety, depression, problems in dealing with the public, difficulty with concentration and pace – had not been addressed and that these limitations would preclude Plaintiff from performing substantial gainful employment [Tr. 29 - 30]. When turning the hearing over to Plaintiff's counsel for questioning, the ALJ reiterated his understanding of Plaintiff's claim: "And again, unless you want to discuss

---

[3]Plaintiff's counsel at the administrative hearing was Brenda Smith [Tr. 27]; her counsel on appeal is Miles L. Mitzner [Doc. No. 1].

5

physical matters beyond limiting her to sedentary, we can accept that the DDS[4] is already limiting her to just sedentary work, so we don't need - - you don't need to prove that. That's already established in my mind." [Tr. 36]. Counsel's subsequent questioning of Plaintiff related solely to her mental complaints, and counsel elicited no testimony from Plaintiff suggesting that her physical impairments limited her to less than sedentary work [Tr. 37 - 91].

Thus, in connection with Plaintiff's *physical* impairments and limitations, the Commissioner maintains that because Plaintiff's counsel unquestionably advised the ALJ that Plaintiff did not contest the determination that she could perform work at the sedentary exertional level [Tr. 29], the ALJ's decision properly includes only the findings of the consultative examining physician[5] and properly references little other evidence of Plaintiff's physical difficulties. Moreover, as a result of Plaintiff's acceptance of the sedentary assessment, the Commissioner argues that the ALJ's corresponding RFC at the sedentary exertional level was proper. As legal support for his argument, the Commissioner relies [Doc. No. 13, p. 6] on the Tenth Circuit's conclusion in *Hawkins v. Chater,* 113 F.3d 1162 (10th Cir. 1997):

---

[4]The ALJ appears to have been referring to the State of Oklahoma Disability Determination Division.

[5]The findings of the consultative examining physician [Tr. 470 - 476] informed the State agency's sedentary exertional level determination [Tr. 506, referencing the report of the consultative examiner ("CE").

6

> [W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.

*Id.* at 1167.

In her reply brief, Plaintiff contends that "Plaintiff is not required to argue at the administrative level or else lose her right to challenge same at the appellate level. No such 'rule' can be found." [Doc. No. 16, p. 2].[6] Additionally, Plaintiff argues that the *Hawkins* decision is inapplicable because it "is a medical record[7] case not a case for general development of the case *per se'*." *Id.* Plaintiff maintains further that administrative hearings are nonadversarial and "[t]he more important issue was the failure to develop the case even if the attorney for the Plaintiff didn't properly argue the case. This is a mere side issue, *after* the responsibility of the ALJ to do his basic job." *Id.* at 2 - 3.

---

[6]It is possible Plaintiff is referring to the Supreme Court's decision in *Sims v. Apfel,* 530 U.S. 103 (2000), where the Court concluded that a claimant is not precluded from raising an issue on appeal that was not first presented to the Appeals Council. In discussing Social Security proceedings, the *Sims* Court noted that in a "inquisitorial rather than adversarial" Social Security case, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is similarly broad." *Id.* at 111. There is nothing in *Sims*, however, that suggests that when an ALJ is attempting to develop such arguments, a counseled claimant is free to affirmatively take one position at the administrative level and another on appeal. There is a distinction between omission – not including an issue before the Appeals Council – and commission, that is, affirmatively *conceding* an issue before the ALJ.

[7]The issue in *Hawkins* was actually whether the ALJ erred by failing to order a consultative examination. *See Hawkins v. Chater,* 113 F.3d 1162 (10th Cir. 1997).

7

The Tenth Circuit recently addressed a similar situation in the case of *Melendez v. Astrue,* No. 09-3102, 2009 WL 4827487 (10th Cir. Dec. 16, 2009) (unpublished op.). There, Plaintiff maintained that the ALJ erred by failing to address whether his spine impairment was equal in severity to Listing 1.04A, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04A. As the court noted, however, the ALJ asked Plaintiff's counsel at the administrative hearing if Plaintiff was maintaining that his condition met or equaled the criteria in a listed impairment and his counsel said no. Under those circumstances, the court concluded that "[w]e discern no error where a claimant's counsel unambiguously concedes an issue before the ALJ. *Cf. Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997) ("[A]n ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case . . . .")." *Melendez,* 2009 WL 4827487, at *4.

Here, as in *Melendez,* Plaintiff's counsel "unambiguously concede[d]" an issue in response to a question by the ALJ. *Id.* Plaintiff has not directed the court to any authority suggesting that the ALJ could not take counsel at her word; neither is the undersigned aware of such. Because Plaintiff's first point of error makes *no* claim that the ALJ erred other than in his assessment of Plaintiff's *physical* impairments [Doc. No. 12, pp. 2- 4], the undersigned finds no merit to Plaintiff's first claim of error. As a result of counsel's affirmative agreement at the administrative hearing that Plaintiff's physical impairments did not prevent her from performing work at the sedentary exertional level, only challenges to the ALJ's assessment of Plaintiff's mental impairments remain, and Plaintiff has voiced no such challenge in her first claim of error on appeal.

8

It should be noted that the undersigned has also carefully reviewed Plaintiff's reply brief for any supported and developed claim of error in connection with Plaintiff's mental impairments and RFC as well as with the ALJ's negative assessment of the credibility of Plaintiff's mental complaints. Normally, issues raised for the first time in a reply brief are not reviewed by a court. *See Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000). Nonetheless, the circumstances of this case are not typical. Because Plaintiff's opening brief argument does not address the fact that Plaintiff's hearing attorney conceded Plaintiff's ability to work at the sedentary exertional level despite her physical impairments, the undersigned had some concern that appellate counsel had overlooked that fact. Had this been the case, the undersigned would have certainly expected counsel to acknowledge this omission on reply, and to mount a challenge to any perceived error in connection with the mental aspects of the case.[8] No such acknowledgment was made, however, and no argument with regard to any mental limitations was properly developed. Accordingly, the undersigned has concluded that Plaintiff's decision not to assert error in this appeal in connection with the mental evidence and assessment was a strategic one, and the opportunity to make such a claim has now been waived.

---

[8]Plaintiff's third claim of error raises claims of improper conduct by the ALJ that touch on questioning during the administrative hearing – a hearing in which *only* Plaintiff's mental difficulties were at issue as a result of her counsel's concession. These claims of improper conduct, however, reach neither the mental medical evidence of record nor the assessment of Plaintiff's mental RFC.

**The Impact of Plaintiff's Obesity on Her RFC**

The same rationale holds true with respect to Plaintiff's second claim of error in this appeal – that the ALJ failed to analyze and discuss how Plaintiff's obesity[9] limited her ability to perform basic work activities [Doc. No. 12, pp. 4 - 6]. Nonetheless, following her counsel's concession that Plaintiff's *physical* impairments did not prevent her from performing work at the sedentary exertional level, the impact of Plaintiff's obesity on her *physical* abilities was no longer an issue open for the ALJ's determination.[10] And, while obesity can certainly impact a claimant's *mental* health, *see* Social Security Ruling 02-1p, 2000 WL 628049, at *3, Plaintiff has neither framed that argument nor has she directed the court to any finding that Plaintiff's obesity causes or contributes to any mental impairment [Doc. No. 12, pp. 4 - 6]. Plaintiff's failure to develop the factual – and legal – bases for her arguments is sufficient to reject any unsupported claims. *See Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir. 2003) (finding appellate argument insufficiently developed and declining to speculate on appellant's behalf); *Effinger v.Callahan*, No. 97-7001, 1997 WL

---

[9]Plaintiff suggests that the ALJ erred by failing to list obesity as one of Plaintiff's severe impairments [Doc. No. 12, p. 4]. Nonetheless, and as the Commissioner correctly responds, the relevant issue is whether Plaintiff had any functional limitations resulting from her obesity, and Plaintiff has not submitted any evidence of greater limitations than those already reflected by Plaintiff's RFC [Doc. No. 13, p. 8, citing *Bernal v. Brown,* 851 F.2d 297, 301 (10th Cir. 1988)].

[10]Plaintiff maintains in her opening brief on appeal that "[t]he ALJ also makes a statement that he has 'considered' the impact of [Plaintiff's] obesity on her RFC." [Doc. No. 12, p. 4]. Plaintiff, however, does not cite to such a statement and the undersigned has not found such statement in the ALJ's decision. This is consistent with the fact that there was no reason for the ALJ to separately analyze the impact of Plaintiff's obesity in this case.

446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (the court will not comb through the record where counsel has not provided specific references tied to an argument) (citing *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)). Plaintiff's second claim of error is unavailing.

**Whether the ALJ Acted Improperly**

Here, Plaintiff raises five distinct complaints. First, she asserts that "[t]he fact is apparent from a reading of the decision that the ALJ must not have reviewed or considered the *entire* medical record before forming his conclusion and opinion." [Doc. No. 12, p. 6]. The only medical evidence referenced by Plaintiff is from "Elliott H. Howe, MD, where he diagnoses the Plaintiff with rheumatoid arthritis and fibromyalgia as far back as March 2006. (CT 297 - 307)[.]" *Id.* Once again, however, Plaintiff's ability to function physically at the sedentary exertional level has been conceded.

Next, Plaintiff suggests that "[t]he ALJ demonstrates a proclivity to pick only that medical which will support his decision without taking all the evidence into consideration." *Id.* By way of support, Plaintiff recites several boiler-plate statements of Social Security law but fails to relate such statements to particular evidence or to specific findings by the ALJ. As before, the court is unable to review a conclusory, undeveloped argument of this type.

Third, and in her first argument bearing on the mental medical evidence of record, Plaintiff states as follows:

> This is also an interesting decision in that the ALJ dedicated several pages of his decision toward dissecting the testimony of both the Plaintiff and her case worker who testified at the hearing (CT 19 - 25), but then failed to

11

>relate any of his opinion to the actual medical record which should have been the source of not only his opinion, but also the RFC which he used to return her to her past relevant work. Had he committed his opinion to the actual medical record and then, subsequently, used the actual medical record to distinguish the testimony, he could have avoided committing such error.

*Id.* at 7. The ALJ's "dissecti[on]," *id.,* of the testimony of Plaintiff and her mental health case manager was in conjunction with his negative assessment of Plaintiff's credibility and, contrary to Plaintiff's claim, the ALJ's decision clearly reflects his consideration of Plaintiff's mental health treatment records [Tr. 22 - 25]. Plaintiff again presents her argument in conclusory, unsupported generalities and has failed to point the court to the ALJ's violation of *any* particular rule of law or to *any* specific evidence that undermines the legal and evidentiary foundation of his credibility assessment.

Plaintiff's next complaint about the ALJ's allegedly improper conduct involves his conversations with Plaintiff during the course of the administrative hearing [Doc. No. 12, pp. 7 - 8]. She complains that the ALJ shared the name of a book with her and made a couple of inappropriate jokes. *Id.* A review of the hearing transcript reveals that Plaintiff expressed her disquiet with the hearing process several different times [Tr. 34, 37, and 52]; this review further reveals that the two jokes [Tr. 38 and 39] referenced by Plaintiff were obviously calculated to put Plaintiff at ease and were clearly not "inappropriate." Neither was it improper for the ALJ to bring the name of a book to Plaintiff's attention; the ALJ appeared to be genuinely interested in Plaintiff and in understanding her difficulties [Tr. 56 - 57].

Finally, Plaintiff suggests that it was deceptive for the ALJ – who ultimately determined that Plaintiff was not disabled – to advise at the conclusion of the hearing that

he was prepared to award her benefits but not for the entire period she was requesting [Doc. No. 12, p. 8]. Plaintiff's theory is that "[i]f the Plaintiff and her attorney believe they have won the case, many times they stop working the case because they believe the ALJ has his mind made up." *Id.* This was not what occurred in this matter, however. The record reflects that Plaintiff's counsel did not "stop working the case;" instead, nine days after the administrative hearing, Plaintiff's counsel submitted additional mental health documentation [Tr. 729 - 753] along with the following note advocating on behalf of her client:

> Please find the attached Edwin Fair records for the above named claimant. Please add these matters to her file. One point of direct relevance is the GAF scores: 8/23/07 - 55, 2/13/08 - 63 and from the previously (11-14-08) submitted records dated 7/30/08 - 56, and 11/04/08 - 47. This concludes any and all additional information which we would submit in this case. Thank you for your time and attention to this matter.

[Tr. 728]. The evidence does not support Plaintiff's complaint of improper conduct by the ALJ.[11]

**Vocational Expert**

Here, Plaintiff maintains that "[t]he faulty RFC caused the ALJ further error when he failed to properly utilize the vocational expert at the hearing. The ALJ did not ask the all-encompassing question utilizing all of the claimant's impairments." [Doc. No. 12, pp. 8 - 9]. The Commissioner responds by showing that the ALJ first determined that Plaintiff could

---

[11]By the same token – and apart from its legal relevance – Plaintiff's argument [Doc. No. 12, p. 8] that the ALJ's statement had a "chilling effect" on Plaintiff and her counsel is not factually supported in light of counsel's post-hearing filings.

perform sedentary work [Tr. 19];[12] he then asked the vocational expert to describe the job requirements of Plaintiff's past relevant work as a secretary [Tr. 77]; the vocational expert testified that such work was sedentary, *id.*; the ALJ then asked the vocational expert to assume an individual with Plaintiff's age, education, past work experience, and RFC [Tr. 78]; and, the vocational expert testified that such an individual could perform Plaintiff's past relevant work as a secretary. *Id.*

There is no question that hypotheticals posed to a vocational expert must reflect a claimant's impairments with precision, *see Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991), "but they need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996). In response to Plaintiff's argument that the ALJ should have included all of Plaintiff's diagnoses and symptoms in the hypothetical question [Doc. No. 12, pp. 9 - 10], the Commissioner maintains that "the ALJ's hypothetical question encompassed all of the limitations that the record supported." [Doc. No. 13, p. 12]. Plaintiff does not suggest otherwise in her reply brief and, in fact, incorrectly states that "Defendant also apparently does not disagree with Plaintiff's argument regarding the vocational expert." [Doc. No. 16, p. 6].

Finally, Plaintiff isolates [Doc. No. 12, p. 10] the following statement made by the ALJ in his written decision: "The record, as well as testimony also reveals that [Plaintiff] has

---

[12]Once again, the fact that Plaintiff's physical limitations do not prevent her from performing sedentary work has been conceded; the fact that her mental difficulties do not prevent her from performing sedentary work has not been properly challenged on appeal.

children, which she is able to care for, which can be quite demanding both physically and emotionally, without any particular assistance and she readily admits she attends their activities, including football games." [Tr. 25, italics and underlining omitted]. Plaintiff argues that the ALJ determined that the foregoing was

> "sufficient grounds to determine the claimant is able to engage in a competitive work environment, day in, day out, for 50 weeks out of the year. . . . There is no medical evidence cited to support this medical conclusion by this ALJ and this is error. Because a mother is capable of assisting with the care of her children does not demonstrate the capacity to sustain work in a competitive environment."

[Doc. No. 12, p. 10]. Contrary to Plaintiff's claim, this was not a medical conclusion reached by the ALJ in support of Plaintiff's RFC. Instead, it is a portion of the ALJ's credibility determination where he was properly considering Plaintiff's daily activities[13] as well as inconsistencies[14] in her stated inability to leave her home [Tr. 24 - 25].

No error was committed by the ALJ as is argued in Plaintiff's fourth claim on appeal [Doc. No. 12, pp. 8 - 11].

---

[13]Pursuant to Social Security regulations, the ALJ may consider Plaintiff's daily activities in evaluating her symptoms. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a).

[14]This manner of evaluating Plaintiff's credibility is proper. "One strong indication of the credibility of an individuals's statements is their consistency, both internally and with other information in the case record." Social Security Report 96-7p, 1996 WL 374186, at * 5.

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by May 31, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 10th day of May, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE